KENNARD, J., Concurring and Dissenting.
I am unable to join either the majority or the dissenting opinion.
*338 I reject the dissent’s conclusion that the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C. § 136 et seq.) preempts no state law tort actions asserting failure-to-warn claims predicated upon alleged inadequacies in pesticide labels that the United States Environmental Protection Agency (EPA) has approved.
But I also reject the majority’s conclusion that FIFRA preempts all such state law failure-to-warn claims. Rather, I conclude that FIFRA preempts a state law failure-to-warn claim based upon alleged inadequacies in an EPA-approved pesticide label if, but only if, a finding of inadequacy would be inconsistent with FIFRA. And, unlike the majority, I do not view the EPA’s approval of a pesticide label as conclusively establishing the manufacturer’s compliance with FIFRA. Because FIFRA itself requires correction of EPA-approved labels upon proof of crop damage or similar adverse effects, preemption exists only if the EPA, presented with evidence of the crop damage, has not required, and would not require, any label correction.
The provision of FIFRA at issue here reads:
“(a) In general.
“A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
“(b) Uniformity.
“Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.
“(c) Additional uses.
A State may provide registration for additional uses of federally registered pesticides formulated for distribution and use within that State to meet special local needs in accord with the purposes of this subchapter and if registration for such use has not previously been denied, disapproved, or canceled by the Administrator. . . .” (7 U.S.C. § 136v.)
In her dissenting opinion, Justice Werdegar views subdivision (b) of this provision, which prohibits states from imposing any “requirements for labeling or packaging in addition to or different from those required under this subchapter,” as preempting only positive law, in the form of statutes or *339 regulations, but not suits at common law. I disagree. Tort liability, imposed by a suit at common law, is an indirect but powerful method of regulating the contents of pesticide labels. To the extent that such regulation is inconsistent with the requirements of FIFRA, I conclude that federal law preempts it, just as it preempts inconsistent state requirements imposed by statute or regulation. Thus, I agree with the majority in rejecting a distinction between state regulation by statute or regulation and state regulation by tort liability.
On the other hand, I do not agree with the majority’s assumption that when the EPA has once exercised its authority under FIFRA by approving a pesticide label, the pesticide’s manufacturer necessarily demonstrates full compliance with FIFRA by affixing the EPA-approved label to the product. EPA approval of a pesticide label is always provisional, subject to correction if the EPA becomes aware of information suggesting the need for different or additional warnings. (40 C.F.R. § 159.184 (1999); see maj. opn., ante, at pp. 332-333.) In this regard, FIFRA differs from the Public Health Cigarette Smoking Act of 1969 (15 U.S.C. § 1331 et seq.), which specifies particular language for a label warning. Accordingly, I do not agree with the majority that Cipollone v. Liggett Group, Inc. (1992) 505 U.S. 504 [112 S.Ct. 2608, 120 L.Ed.2d 407], which construed the preemption provision of the Public Health Cigarette Smoking Act of 1969, is controlling or particularly helpful in construing FIFRA’s preemption provision. Because FIFRA does not require any specific warning, but leaves the content of the label to be approved by the EPA, with a continuing duty of revision in response to new information, a manufacturer’s use of an EPA-approved label does not establish full compliance with FIFRA.
Here, for example, plaintiffs allege that a combined application of two chemicals, each of which carried an EPA-approved label, caused significant damage to plaintiffs’ walnut crop. Under FIFRA, the manufacturer of these two chemicals was required to notify the EPA of significant and unexpected crop damage resulting from combined use of its products. Upon consideration of this information, the EPA may determine that the products are “misbranded” and require that their labels be revised to caution against the combined use. The record before us does not reveal whether anyone has notified the EPA of alleged crop damage caused by the combined use of these chemicals, much less what the EPA has done in response to this information. It seems not unreasonable to assume, in the absence of other information, that if the combined use of these chemicals does cause significant crop damage, as plaintiffs have alleged but have not yet had the opportunity to prove, the EPA will, if it has not already done so, require label revision. If this assumption is correct, then allowing plaintiffs to pursue a failure-to-warn claim against the manufacturer does not conflict with *340 FIFRA because both impose the same requirement: revision of the product labels to include appropriate warnings against combined use.
Because the Court of Appeal correctly determined, albeit for the wrong reason, that defendants have failed to establish FIFRA preemption of plaintiffs’ claims, I would affirm the judgment of the Court of Appeal. Upon remand to the trial court, I would permit defendant manufacturer to attempt to establish FIFRA preemption through evidence that the EPA, after full consideration of information relevant to the allegation that combined use of its products causes crop damage, has determined that no change in the products’ labels is required.